CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 28 2012

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LYNN H. BRUSHWOOD, | Civil Action No. 7:10-cv-00565 |
| Plaintiff, | |
| | **MEMORANDUM OPINION** |
| v. | |
| WACHOVIA BANK, N.A., *et al.* | |
| | By: Samuel G. Wilson |
| Defendants. | United States District Judge |

The Family Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2611 *et seq.* (2006), requires a covered employer to grant a leave of absence to an employee without pay for up to twelve weeks during any twelve-month period for various reasons including serious health conditions—incapacitating illnesses or conditions that last for more than three consecutive days. The FMLA protects an employee who has provided "sufficient information" for her employer "to reasonably determine whether the FMLA may apply to the [employee's] leave request" from her employer's interference with her right to take the requested leave. 29 C.F.R. § 825.303(b). Following an injury to her foot, plaintiff Lynn Brushwood notified her employer, Wells Fargo Bank, NA (Wells Fargo),[1] that she would be absent for more than one day but would be unable to obtain a doctor's excuse that extended beyond a single day. Her supervisor informed her that Wells Fargo would terminate her for any unexcused absences. When Brushwood failed to report

---

[1] Brushwood began her employment with a Wachovia Bank, N.A. predecessor bank. Wells Fargo purchased Wachovia in late 2008, and the deal closed on December 31st of that year. The plaintiff names both Wachovia Bank, N.A. and Wells Fargo Bank N.A. The FMLA expressly defines "employer" to include successors in interest. 29 U.S.C. § 2611(4)(A)(ii)(II); see also Cobb v. Contract Transp., Inc., 452 F.3d 543, 551 (6th Cir. 2006). Thus, whether Wachovia or Wells Fargo employed Brushwood at any given time is irrelevant for the purposes of this case, and the defendants will be referred to as Wells Fargo throughout.

to work on the second day, Wells Fargo terminated her employment. The matter is before the court on the parties' cross-motions for summary judgment. This case raises the question of whether Brushwood's statement to her employer, carrying as it did the implicit message that her doctor did not believe her condition to be sufficiently serious to justify her absence for more than a single day, was sufficient notice that she was taking protected medical leave. The court finds that it was not and grants Wells Fargo's motion for summary judgment.

I.

Brushwood served in various positions at Wells Fargo, and Wells Fargo employed her as a personal service representative when it terminated her in May 2010 for excessive absenteeism. Wells Fargo used a point system that rewarded consistent attendance and punctuality and penalized unscheduled absences and tardiness. (Kent Dep. 30:1, Aug. 29, 2011.) Wells Fargo deducted points for unscheduled absences and tardiness and added points for each month in which there were no unscheduled absences or late arrivals. (Brushwood Dep. 146:15–22, Aug. 22, 2011.) Negative forty-one points triggered an informal warning and negative fifty-seven points triggered termination. (Brushwood Dep. 147:11–19.) Certain types of absences, such as FMLA leave, triggered no point reduction whatsoever.[2] (Brushwood Dep. 145:12–23.) Wells Fargo docked Brushwood's points on three separate occasions from January through March of 2010, none of which she claims to recall, (Brushwood Dep. 170–71:18–19, 175:11–16, 178:3, 187:18–24), and it penalized her for four consecutive days of unscheduled absences in April of

---

[2] During her tenure at Wells Fargo, Brushwood took FMLA leave on three separate occasions: in 1998 to recover from surgery, in 2001 to recover from surgery, and in 2009 during treatment for depression. (Brushwood Dep. 159:1–24.) Brushwood provided Wells Fargo with a doctor's note for each occasion. (Brushwood Dep. 160:1–8.)

2

that year.[3] (Brushwood Dep. 189–90:176.) Though Brushwood's point balance had reached negative 62.5, Wells Fargo gave her a warning instead of terminating her. (Brushwood Dep. 194:8–12.)

Upon being warned, Brushwood expressed concern to her immediate supervisor, Doris Kent, and to Kent's supervisor, Kathleen Johnson, that it was possible that something else might happen beyond her control that would cause her to miss work. According to Brushwood, Johnson replied that Brushwood was a good employee and that if anything came up she should discuss it with Kent. (Brushwood Dep. 197–98:13–7.) Brushwood acknowledged, however, that she understood that she was not exempted from Wells Fargo's attendance policy. (Brushwood Dep. 198:13–15.)

On Saturday, May 1, 2010, Brushwood was hanging curtains while standing on a reclining sofa at her home when she stepped between the sofa's cushions and cut her foot on the metal recliner mechanism. (Brushwood Dep. 209:4–9.) Though her cut was bleeding, Brushwood decided to clean and wrap it rather than go to the hospital. (Brushwood Dep. 209–10:25–5.) However, she awakened in pain, and her husband took her to Carilion Hospital on Sunday. (Brushwood Dep. 210:6–11.) According to the medical report, the cut was three centimeters long and did not result in a fracture. (Pl's. Mot. for Partial S.J., Ex. 5, ECF No. 33-5.) The treating physician at the hospital cleaned the cut, gave Brushwood a tetanus shot, wrote her a prescription for a painkiller, and gave her a note indicating that she would be unable to work for one day. (Brushwood Dep. 210:20–24.) Brushwood responded in surprise to the treating physician's assertion that she could return to work on Tuesday, but the doctor would not

---

[3] Brushwood indicates that it was her understanding that points would not accumulate beyond the first day missed for multiple consecutive absences for medical reasons and that a doctor's note would not affect the assignment of points. (Brushwood Dep. 192:6–16.)

change her opinion or provide her an excuse for being absent from work beyond a single day. (Brushwood Dep. 210-11:25-2, 240:19-23.)

Brushwood called Kent Sunday morning and again early Monday morning, leaving voice mails indicating she would not be at work on Monday. (Brushwood Dep. 211:10-14, 229:19-24; 231:8-12; Kent Dep. 33:11-14, 34-35:19-2.) She also called the hospital on Monday, and the hospital confirmed that the doctor would not provide her with an excuse beyond Monday. (Brushwood Dep. 240-41:24-2.) Kent called Brushwood back on Monday and told her that Wells Fargo likely would fire her if she did not show up for work on Tuesday and asked her if there was any way she could come in Tuesday. (Brushwood Dep. 239:11-16.) Brushwood indicated that she could not come in, (Brushwood Dep. 239:3-6), and Kent encouraged her "to go to her personal doctor to see if he would keep her out longer than one day where she would be able to qualify for short-term disability and FMLA." (Kent Dep. 37:3-6.) Brushwood explained that she had "even called over to Carilion and said . . . it's not going to be acceptable at work; and Carilion [H]ospital . . . said [the treating emergency room physician] put it as one day," (Brushwood Dep. 239:19-25), and when Kent encouraged Brushwood to contact Brushwood's personal physician, Brushwood insisted that "her doctor would not override what the emergency room doctor had told her."[4] (Kent Dep. 37:6-8.)

Brushwood did not go into work on Tuesday, May 4th, and she called Kent to tell her that she was still unable to work. (Brushwood Dep. 211:15-18.) Kent called Brushwood back that day and informed her that Wells Fargo was firing her. (Kent Dep. 31:20-23; Brushwood Dep. 211:20-22.) Johnson (Kent's supervisor), Kent's site leader, and HR advisors made the decision

---

[4] In her deposition, Brushwood said she did not recall discussing obtaining a note from her personal doctor, though she did not contradict Kent's account in any way. (Brushwood Dep. 241:9-10) ("I'm not gonna say that conservation didn't take place. I don't recall that conversation."); (241:17) ("I don't recall that conversation.")

4

to fire Brushwood. (Kent Dep. 24:12–14.) Brushwood came into the office that Friday to remove her personal possessions and was given written notice confirming that Wells Fargo had fired her for "attendance point violation[s]." (Kent Dep. 42:2–4.)

After her initial May 2, 2010 visit to the hospital, Brushwood next visited a doctor on Friday, May 7, 2010. (Brushwood Dep. 257:14–15.) Her doctor gave her another prescription for a painkiller. (Brushwood Dep. 259:7–9.) Three months later Brushwood's foot had still not properly healed, and she made an appointment with a surgeon. (Brushwood Dep. 262:7–8.) The surgeon informed her that a cyst had formed and, after two unsuccessful nonsurgical procedures, performed surgery on August 20th to remove it. (Brushwood Dep. 263:1–7, 265:6–10.) According to Brushwood, her foot has yet to heal entirely. (Brushwood Dep. 266:22–23.)

## II.

Brushwood claims that, in violation of the FMLA, Wells Fargo interfered with her right to take protected leave by firing her when she failed to show for work without a medical excuse. Wells Fargo has moved for summary judgment on two grounds. First, it contends that Brushwood's statement that she would be absent more than a day without a medical excuse was not sufficient to put it on notice that she was taking protected medical leave, and second, it contends that she, in fact, did not have a "serious health condition" that justified her absence. Brushwood's statement to Wells Fargo, which essentially conveyed the message that her treating physician did not believe her condition to be serious enough to justify her absence from work for more than a single day and that Brushwood believed it to be futile for her to attempt to obtain an excuse from her family physician, was not sufficient notice that she was taking protected medical leave. Consequently, the court will grant Wells Fargo's motion for summary judgment.[5] Under

---

[5] Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant

5

the circumstances, the court need not reach Wells Fargo's contention that Brushwood did not, in fact, suffer from a serious health condition.

The FMLA and its implementing regulations,[6] 29 CFR § 825.100 *et seq.*, require a covered employer to grant a leave of absence to a covered employee without pay for up to twelve weeks during any twelve-month period for various reasons including serious illnesses—incapacitating illnesses or conditions that last for more than three consecutive days. See 29 C.F.R. § 825.115(a). "The Act makes it unlawful for an employer to 'interfere with, restrain, or deny the exercise of' these rights, § 2615(a)(1), and violators are subject to consequential damages and appropriate equitable relief, § 2617(a)(1)." Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 86 (2002). "An employee is mandated to provide notice to her employer when she requires FMLA leave." Rhoads v. FDIC, 257 F.3d 373, 382 (4th Cir. 2001). An employee who takes leave for a qualifying medical condition must notify his employer "as soon as practicable" and "provide sufficient information for [the] employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. §825.303(a) & (b). "While notice to the employer may be informal and need not invoke the FMLA by name, the employer, at a minimum, must receive information sufficient to make it evident that the leave requested is

---

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party moving for summary judgment bears the burden of informing the court of the basis for its motion, and identifying those parts of the record which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In reviewing a summary judgment motion under Rule 56, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

Sufficiency of notice is partially a question of fact and partially a question of law. See K & M Joint Venture v. Smith Int'l, Inc., 669 F.2d 1106, 1111 (6th Cir. 1982) ("[T]he question of whether any notice was given, and if so, what the notice consisted of and when it was given, is one of fact. However, the question of whether the notice satisfied the statutory requirement is one of law.").

[6] The Secretary of Labor has devised an administrative structure pursuant to Congress's directive to issue regulations "necessary to carry out" the Act. See Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 86 (2002) (quoting 29 U.S.C. § 2654).

6

Case 7:10-cv-00565-SGW-RSB Document 52 Filed 02/28/12 Page 6 of 9 Pageid#: 610

qualifying leave under the FMLA." Satterfield v. Wal-Mart Stores, Inc. 135 F.3d 973, 981 (5th Cir. 1998) (quoting Cehrs v. Ne. Ohio Alzheimer Research Ctr., 959 F. Supp. 441, 449 n.9 (N.D. Ohio 1997)); see also Johnson v. Primerica, No. 94cv4869, 1996 WL 34148, at *5 (S.D.N.Y. Jan. 30, 1996) ("While an employer's duty to inquire may be predicated on statements made by the employee, the employer is not required to be clairvoyant."); Reich v. Midwest Plastic Eng'g, Inc., No. 1:94cv525, 1995 WL 514851, at *3 (W.D. Mich. July 26, 1995) ("[A]t a minimum, an employee must inform her employer of her condition with sufficient detail to make it evident that the requested leave is protected as FMLA-qualifying leave.").

The FMLA and its implementing regulations do not place an onerous or technical burden on an employee seeking to take FMLA protected leave. The employee simply must "provide sufficient information for [the] employer to reasonably determine" that the FMLA might apply to the leave request. 29 C.F.R. § 825.303(b). Here, Brushwood informed Kent, her supervisor, that the emergency room doctor had refused to give her an excuse that extended beyond a single day, and Brushwood resisted Kent's suggestion that Brushwood contact Brushwood's personal physician, simply responding that "her doctor would not override what the emergency room doctor had told her." (Kent Dep. 37:6–8). Intended or not, Brushwood's message objectively viewed distills to this: Brushwood's treating physician did not believe her condition to be sufficiently serious to justify her absence from work for more than a single day and Brushwood thought it futile, and would not request, an excuse from her personal physician. Under these circumstances, the court finds that Brushwood failed to provide Wells Fargo sufficient information to make it evident that the leave she was requesting was qualifying leave under the FMLA.

7

After receiving adequate notice, an employer is "expected to obtain any additional required information through informal means." See 29 C.F.R. § 825.303(b). Brushwood argues that Wells Fargo had an obligation to inquire further. Though the court concludes that Brushwood's notice was not sufficient to trigger the FMLA obligations adequate notice would have triggered,[7] it is clear that Kent did not let the matter rest with Brushwood's representation that her treating emergency room physician would not give her an excuse for more than a single day. Kent, without success, encouraged Brushwood to seek an excuse from her personal physician. Brushwood's failure to seek such an excuse due to a perceived futility of such an effort stymied Wells Fargo's further inquiry. Accordingly, Wells Fargo did not have an obligation to inquire further when it terminated Brushwood's employment when she failed to return to work for the second day.

If an employee has given adequate notice, an employer *may* insist in writing on receiving a certification within fifteen days from a health care provider that the employee has a qualifying, incapacitating illness. 29 C.F.R. § 825.305(a) & (b); see also Rhoads, 257 F.3d at 383. Brushwood argues that Wells Fargo acted prematurely when it terminated Brushwood before the fifteen-day period to provide a certification had run. She suggests that had Wells Fargo not acted so quickly she would have supplied a certification.[8] However, Wells Fargo never requested that

---

[7] Absent sufficient notice, the responsibility of the employer to obtain additional information is not triggered, and the employer can deny leave even if it turns out the employee has a serious health condition. Rodriguez v. Smithfield Packing Co., 454 F. Supp. 2d 508, 515–16 (D. Md. 2008); Aubuchon v. Knauf Fiberglass, GmbH, 359 F.3d 950, 951 (7th Cir. 2004).

[8] That representation stands in sharp contrast to Kent's uncontradicted deposition testimony that Brushwood would not even seek an excuse from her personal physician because Brushwood thought it would be futile. Brushwood's response gave no indication that she needed or was seeking time to obtain medical verification of a serious medical condition. Rather, Brushwood's response conveyed the clear message that the emergency room physician had not and would not supply her with another medical excuse and she would not be seeking one from her personal physician.

8

Brushwood provide a certification, nor was Wells Fargo under any obligation to do so because Brushwood failed to give adequate notice.

Finally, Brushwood contends that, after Wells Fargo terminated her and she returned to her office on crutches to collect her personal effects, it had to be obvious to Wells Fargo that she in fact had a serious medical condition under the FMLA justifying her absences. Assuming without deciding that her appearance at the office on crutches indicated that she, in fact, had a serious medical condition, "notice that comes after an alleged interference with an employee's FMLA rights is ineffective, even if the content would have been sufficient." Couick v. Morgan, No. 4:10cv153, 2010 WL 5158206 (S.D. Ga. Dec. 14, 2010); see also Hammon v. DHL Airways, Inc., 165 F.3d 441, 451 (6th Cir. 1999) (rejecting FMLA claim where the plaintiff failed to notify his employer of his qualifying condition during his employment).

### III.

The notice that Brushwood gave Wells Fargo before Wells Fargo terminated her was not sufficient to make it evident that the leave she was requesting was qualifying leave under the FMLA. Accordingly, the court will grant Wells Fargo's motion for summary judgment.

**Enter:** February 28, 2012.

UNITED STATES DISTRICT JUDGE

9